**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

THOMAS SALES,
*Defendant-Appellant.*

No. 06-50219

D.C. No.
CR-03-00120-
SVW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
November 15, 2006—Pasadena, California

Filed February 9, 2007

Before: Betty B. Fletcher, Ferdinand F. Fernandez, and
Susan P. Graber, Circuit Judges.

Opinion by Judge B. Fletcher

**COUNSEL**

Jill K. Ginstling, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Erik M. Silber and Scott M. Garringer, Assistant United States Attorneys, Criminal Division, Los Angeles, California, for the plaintiff-appellee.

---

**OPINION**

B. FLETCHER, Circuit Judge:

Defendant-appellant Thomas Sales appeals several conditions of supervised release imposed as part of his sentence, following his conviction by guilty plea for counterfeiting United States federal reserve notes.

## I.

Between late December 2002 and mid-January 2003, Sales used his scanner and printer to make counterfeit currency: he scanned images of $20 bills into his computer and then printed the scanned images. Sales did so at the prompting of Dan Flynn, a friend who had a history of felony convictions for offenses including forgery.[1] Sales had no prior criminal record. He had been self-employed repairing telephones, and installing cable lines, home alarm systems, and home computer networks.

Following his arrest and indictment, Sales pled guilty to scanning and recording digital images of United States currency in violation of 18 U.S.C. § 474 and creating counterfeit currency in violation of 18 U.S.C. § 471. He was sentenced to an eight-month term of imprisonment, to be followed by four years of supervised release. Sales now challenges the following special conditions of supervised release imposed by the district court:

---

[1]Flynn provided Sales with the paper and ink for printing the bills, some instructions, and an incentive—he offered Sales household goods in exchange for the counterfeit monies.

4. The defendant shall participate in outpatient substance abuse treatment and submit to drug and alcohol testing, not to exceed two tests per month, as instructed by the Probation Officer. The defendant shall abstain from using illicit drugs, using alcohol, and abusing prescription medications during the period of supervision;

5. The defendant shall use only those computers and computer-related devices, screen user names, passwords, email accounts, and internet service providers (ISPs), as approved by the Probation Officer. Computers and computer-related devices include, but are not limited to, personal computers, personal data assistants (PDAs), internet appliances, electronic games, and cellular telephones, as well as their peripheral equipment, that can access, or can be modified to access, the internet, electronic bulletin boards, and other computers, or similar media; and,

6. All computers, computer-related devices, and their peripheral equipment, used by the defendant, shall be subject to search and seizure and the installation of search and/or monitoring software and/or hardware, including unannounced seizure for the purpose of search. The defendant shall not add, remove, upgrade, update, reinstall, repair, or otherwise modify the hardware or software on the computers, computer-related devices, or their peripheral equipment, nor shall he hide or encrypt files or data without prior approval of the Probation Officer. Further, the defendant shall provide all billing records, including telephone, cable, internet, satellite, and the like, as requested by the Probation Officer.

## II.

**[1]** Title 18 U.S.C. § 3583 sets forth the standards for imposing conditions of supervised release. Subsection 3583(d) provides, in relevant part:

The court may order, as a further condition of supervised release, to the extent that such condition—

> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate.

**[2]** The cross-referenced subsections of 18 U.S.C. § 3553(a) direct a district court to consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed . . .

>> (B) to afford adequate deterrence to criminal conduct;

>> (C) to protect the public from further crimes of the defendant; and

>> (D) to provide the defendant with needed educational or vocational training, medical

> care, or other correctional treatment in the
> most effective manner[.]

We have made clear that the government bears the burden of showing that a discretionary condition of supervised release is appropriate in a given case. *See United States v. Weber*, 451 F.3d 552, 558-59 (9th Cir. 2006).

We have also explained that the statutory requirement that conditions of supervised release be reasonably related to the factors set out in § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D) does not mean that every condition must be reasonably related to every factor: "They are merely factors to be weighed, and the conditions imposed may be unrelated to one or more of the factors, so long as they are sufficiently related to the others." *United States v. Johnson*, 998 F.2d 696, 697, 699 (9th Cir. 1993).

Even if a proposed condition meets this requirement, it still must "involve 'no greater deprivation of liberty than is reasonably necessary for the purposes' of supervised release"—that is, to achieve deterrence, public protection, or offender rehabilitation. *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) (quoting 18 U.S.C. § 3583(d)(2)).

### III.

**[3]** On appeal, Sales argues that the inclusion of alcohol in condition #4 is improper. He maintains that there is no basis for requiring him to submit to alcohol testing and prohibiting him from consuming alcohol. Because Sales did not object to this provision in the district court, we review for plain error. *See United States v. Rearden*, 349 F.3d 608, 614 (9th Cir. 2003).

Sales has no history of alcohol abuse, and his acts of counterfeiting did not involve alcohol. However, the record before the district court revealed Sales's history of substance abuse

and his need for outpatient substance abuse treatment, as well as his history of depression. Given these facts, we find that the district court did not err when it directed Sales to abstain from alcohol and to submit to periodic testing. *Cf. United States v. Gementera*, 379 F.3d 596, 606 n.13 (9th Cir. 2004), *cert. denied*, 126 S. Ct. 735 (2005); *United States v. Carter*, 159 F.3d 397, 399-401 (9th Cir. 1998).

IV.

Sales also argues that the district court abused its discretion when it imposed conditions #5 and #6. For the reasons discussed below, we agree. *Cf. T.M.*, 330 F.3d at 1239-40 & n.2 (applying abuse of discretion standard).

A.

[4] Condition #5 requires that Sales seek and obtain approval from his probation officer before using any particular computer or computer-related device, internet-service provider, or computer or internet account—such as a screen user name or email account. The category of "computer-related devices" covered by condition #5 is extremely expansive, apparently extending to any device capable of accessing the internet or other networks (for example, cell phones and internet appliances such as WebTV).

The probation office and government sought to justify this condition based on Sales's expertise in computers and the fact that Sales employed a computer and two peripherals to commit the instant offense. They posited that this broad condition was reasonably necessary to achieve deterrence.

[5] However, the record does not support this contention. The breadth of condition #5 is not reasonably related to the nature and circumstances of Sales's counterfeiting offense or Sales's history and characteristics.[2] Sales employed a scanner,

---

[2]Because of the "strong link between child pornography and the Internet, and the need to protect the public, particularly children, from sex

computer, and printer to counterfeit currency; his unlawful activity did not utilize any other devices, and in no way involved or relied upon the internet, electronic bulletin boards, or other networks. *Cf., e.g.*, *United States v. Antelope,* 395 F.3d 1128, 1142 (9th Cir. 2005); *Rearden*, 349 F.3d at 621. In addition, Sales has no prior history of illegal conduct involving computer equipment. The police search of Sales's home and his computer equipment, in connection with this arrest, did not reveal any other computer-related or internet-related wrongdoing. We conclude that condition #5 results in a far greater deprivation of Sales's liberty than is reasonably necessary to prevent recidivism, protect the public, or promote any form of rehabilitation. *Cf. T.M.*, 330 F.3d 1239-40; *United States v. Scott*, 316 F.3d 733, 736 (7th Cir. 2003).

The government argues that the precise composition of condition #5 distinguishes it from the special conditions regarding the use of computers and internet which we may have reviewed in other cases: Sales must obtain permission to use a particular machine, device, or ISP (e.g., permission to hook up a wireless internet connection, to purchase or to use a particular laptop), while in some other cases supervisees arguably must obtain permission to engage in particular uses

---

offenders," we have upheld conditions restricting computer and internet access in some cases involving child pornography-related offenses. *Rearden*, 349 F.3d at 621; *see Antelope*, 395 F.3d at 1142 (noting that the condition was appropriate because the internet was "essential to the commission" of the crime); *see also United States v. Fields*, 324 F.3d 1025, 1027 (8th Cir. 2003) (explaining that courts of appeals have been more likely to uphold such conditions when defendants have "used computers or the internet to commit crimes involving greater exploitation" than in cases of simple possession of child pornography).

The record suggests no such link between the internet and counterfeiting. Notably, we are not aware of any published opinion in which this court has upheld such a condition of supervised release imposed on a defendant convicted of a non-sexual offense (and one, moreover, which did not involve any online acts).

of a computer or the internet (e.g., filing a tax return online, reading the newspaper online, writing a letter to a friend in Microsoft Word, checking the weather forecast). For the purpose of our review, the similarity between the two approaches is more striking than any difference: under either type of condition, the defendant is barred from accessing a computer or the internet until he secures the requisite approval, and in neither case is there a guarantee that permission will be granted. We review the language of the condition as it is written and cannot assume, as the government seems to suggest, that approval will be granted.

[6] In light of our determination that the condition imposed results in unnecessary deprivation, we vacate and remand for the district court to impose more suitable restrictions.

## B.

The government's brief asserts that condition #6 is reasonably related to Sales's offense "in that it permits the Probation Officer to determine whether [he] is continuing to misuse his computer and peripheral equipment to create, store, and/or print counterfeit currency." Sales acknowledges that the probation office "must be able to take measures to ensure that he does not use his scanner to make counterfeit currency" but argues that condition #6 "goes far beyond what is necessary to achieve that goal." We agree. Condition #6 cannot stand as presently articulated; further tailoring and clarification are required.

[7] To begin, as currently written the search and seizure provision purports to extend to "[a]ll computers, computer-related devices, and their peripheral equipment, used by the defendant."[3] Ostensibly, this includes machines used for work

---

[3]We expect the scope of "computer-related devices" to be narrowed when condition #5 is reconsidered by the district court on remand. *Cf. Rearden*, 349 F.3d at 621 (concluding that there was "no reasonable possi-

or personal purposes, whether owned by Sales or by others. The government's remarks at oral argument suggested that the provision's coverage was not intended to be so broad. (The government indicated, for example, that it was not expected to extend to equipment used only for work purposes.) Because Sales cannot be left to guess about the intended meaning of the terms of his supervised release, clarification is required.

[8] We also find that condition #6 is overbroad in other respects. A computer monitoring condition in some form may be reasonable. However, to comply with the Fourth Amendment, it must be narrowly tailored—producing no greater deprivation of liberty than is reasonably necessary. At present, the text gives no indication as to what kinds or degrees of monitoring are authorized—and, as courts have noted, monitoring software and/or hardware takes many forms, with greatly varying degrees of intrusiveness. *See, e.g.*, *United States v. Lifshitz*, 369 F.3d 173, 175, 190-92 (2d Cir. 2004); *see also United States v. Stephens*, 424 F.3d 876, 880-81 (9th Cir. 2005) (discussing the "division of labor," in terms of decision-making, between the district court and probation officer).

We note that the government requires Sales to submit "all billing records, including telephone, cable, internet, satellite, and the like, as requested by the Probation Officer." At no time has the probation office or government articulated any justification for this requirement, and none is apparent.

[9] Condition #6 is vacated and remanded to the district court for the imposition of a condition consistent with this disposition.

---

bility" that the term computer or computer-related device "would be interpreted beyond the normal accouterments of one's personal computer such as disks and disk drives, devices for extra storage, etc." to include items such as PDAs—which are included explicitly within the definition in the instant case).

### V.

Conditions #5 and #6 must be modified to satisfy the requirements of 18 U.S.C. § 3583(d). There are many ways in which this can be accomplished on remand.[4] However, we do not attempt to specify the precise modifications that might yield appropriate terms; the district court, in consultation with the probation officer, is better suited to the job of crafting adequate but not overly restrictive conditions of supervised release.

For the foregoing reasons, the district court's imposition of terms of supervised release is AFFIRMED IN PART and VACATED IN PART and REMANDED.

---

[4]For example, among other changes, the requirement of prior approval might be eliminated from condition #5, in whole or in part. *Cf. United States v. Balon*, 384 F.3d 38, 42 (2d Cir. 2004) (discussing a requirement that the defendant disclose computer equipment).